IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD M. BOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-548 |
| | ) | |
| ALLEGHENY ENERGY SERVICE | ) | Judge Terrence F. McVerry |
| CORPORATION, trading and doing | ) | Magistrate Judge Amy Reynolds Hay |
| business as ALLEGHENY POWER | ) | |
| also known as ALLEGHENY POWER | ) | |
| SERVICE CORPORATION, | ) | |
| | ) | RE:  Dkt. [17] |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the motion for summary judgment submitted by the Defendant be granted.

REPORT

Richard M. Bobbs ("Plaintiff") alleges that Allegheny Energy Service Corporation ("Allegheny Energy") discriminated against him by eliminating his position because of his alleged disability, Graves Disease, in violation of the Americans with Disabilities Act ("ADA"), 29 U.S.C. §§ 12101 et seq. See Complaint, ¶¶ 44, 47.  Presently before the court for disposition is a motion for summary judgment filed by Allegheny Energy.  For the reasons that follow, the motion should be granted.

A.      **Factual Background**[1]

Allegheny Energy is a subsidiary of Allegheny Energy, Inc.  Allegheny Energy, Inc. does business as both Allegheny Power, a provider of electricity to consumers, and Allegheny Energy Supply Company, LLC, an entity that generates and sells power.  Allegheny Energy employed Plaintiff as an administrative assistant, whose duties were clerical in nature and included: logging in Pennsylvania Utility Commission ("PUC") complaints, sending responses to the PUC, processing payroll, ordering office supplies, maintaining filing systems, making and moving boxes of filed, submitting invoices, assisting his supervisor in preparing for meetings, and delivering mail.  Plaintiff's supervisor was Rosemary Spoljarick, who managed the Customer Relations Group.

In 2004, Allegheny Energy was facing financial difficulties.  In April, 2004, Charles R. Nevins, II became the Director of Customer Management for Allegheny Energy.  Thereafter, Ms. Spoljarick's group was placed within Customer Management and under Mr. Nevins's control as part of Allegheny Energy's reorganization.  Ms. Spoljarick and the employees she managed began to report to Mr. Nevins effective January 1, 2005.  In February, 2005, Mr. Nevins decided to eliminate Plaintiff's position for the stated reason that, as a result of the reorganization, duplicate work responsibilities were being carried out by administrative assistants.  On February 24, 2005, Mr. Nevins contacted Ms. Spoljarick and Robert Kemerer, Senior Consultant, Business Human Resources Support, and advised them of his decision.  Mr. Nevins instructed Ms. Spoljarick and Mr. Kemerer to meet with Plaintiff and to inform him that his job was being eliminated and that he was being placed on Allegheny Energy's transition list, which would

---

[1]      Unless otherwise noted, the facts identified herein are undisputed, as evidenced by Defendant's Statement of Undisputed Material Facts, Dkt. [18], and Plaintiff's Responsive Concise Statement of Material Facts, Dkt. [27].

provide him sixty (60) days to seek employment within the company prior to being discharged.

Ms. Spoljarick, Mr. Kemerer and Plaintiff met that same day.  Plaintiff did not obtain other

employment within the company and his last day of employment with Allegheny Energy was

April 29, 2005.  The functions previously carried out by Plaintiff were either eliminated or

transferred to others.

On August 15, 2005, Plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC") asserting discrimination based on age and

disability.  Specifically, Plaintiff described his disability as follows.

> As diagnosed by Doctor Charles Kent of Everett and Hurite Opthalmic [sic]
> Association, I have the symptoms of Graves Disease.  My eyes are bulging, dry,
> and itchy.  Also, I have depression, lack of concentration, periods of extreme
> fatigue, dry skin, sweating in cool environments, an extreme sensitivity to cold
> objects.  All these are symptoms of Graves Disease.

Defendant's Appendix, Dkt. 20, Tab K (ADA Intake Questionnaire), p. 3.  Plaintiff also

indicated that he "remained able to perform all parts of [his] job at virtually all times."  Id. at p.

6.

The EEOC issued a Dismissal and Notice of Rights on January 26, 2006, indicating, *inter*

*alia*, that Plaintiff was "not a qualified individual with a disability as defined by the ADA."

Defendant's Appendix, Dkt. 20, Tab C (Dismissal Notice of Rights).  Plaintiff filed the instant

suit on April 24, 2006.

Plaintiff claims he began to experience double vision in December, 2002.  Complaint,

Dkt. 1, ¶ 12.  He saw Dr. Charles Kent, who treated Plaintiff for hypertropia or upward deviation

of the right visual axis such that "the right [eye] is looking more upward [than] the left."

Plaintiff's Appendix, Dkt. 25, Tab 4 (April 2, 2007 letter by Dr. Kent).  Plaintiff asserts that Dr.

Kent related to him that he exhibited muscle weakness in his eye and mentioned the possibility of

multiple sclerosis.  Complaint, ¶ 13.  Dr. Kent also diagnosed double vision with proptosis or

forward displacement or bulging of the eyeball.  Plaintiff's Appendix, Dkt. 25, Tab 4 .  Also, Dr.

Kent recommended that Plaintiff's thyroid levels be checked, which turned out to be normal.  Id.

Plaintiff alleges that shortly after his December 18, 2002 visit to Dr. Kent, he told Ms. Spoljarick

that Dr. Kent told him he showed possible signs of multiple sclerosis.  Complaint, ¶ 14.

   Beginning in early 2003, Plaintiff claims that his eyes frequently became dry and

uncomfortable; he began to pause from his work to close his eyes for short periods to refresh

them.  Complaint, ¶ 16.  He claims that Ms. Spoljarick harassed him regarding closing his eyes

and accused him of sleeping at work.  Complaint, ¶¶ 23-24.  Plaintiff avers that sometime after

April 30, 2003, he related to Ms. Spoljarick that he was suffering from symptoms of Graves

disease.  Complaint, ¶ 21.

   Dr. Kent saw Plaintiff frequently in 2003 and "the double vision seemed to improve.  The

proptosis remained the same and [his] symptoms resolved."  Id.

   According to Dr. Kent, Plaintiff's symptoms worsened in 2005 when he began to

experience "more swelling and pain particularly in the morning."  Id.  Dr. Kent recommended

that the thyroid levels be rechecked.  Dr. Kent apparently diagnosed "Graves disease with an

ophthalmic component only."  Id.  On April 29, 2005, Plaintiff saw an endocrinologist,  Stephen

M. Kowalyk, M.D., who ordered a thyroid stimulate immunoglobulin test, the purpose of which

is to diagnose Graves disease.  Defendant's Appendix, Dkt. 20, Tab I (Excerpts of deposition

testimony of Dr. Kowalyk).  The test results were negative and Dr. Kowalyk concluded that

Plaintiff did not have Graves disease.  Id.

   According to Dr. Kent, Plaintiff returned to him in December, 2005, with complaints of

burning and itching eyes with swelling.  Dr. Kent treated Plaintiff with medication and eyelid tear

4

plugs.  Dr. Kent then saw Plaintiff the following December, 2006, when he continued to have complaints regarding tearing and burning.  Dr. Kent recommended the use of teardrops and omega-3 fatty acids for the dry eye symptoms.  Plaintiff's Appendix, Dkt. 25, Tab 4.

 Plaintiff claims that as of February 24, 2005, Mr. Kemerer was aware of Plaintiff's affliction.  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Dkt. 26, pp. 4-5.  Plaintiff concedes that he had had "no regular interaction with Mr. Nevins, and no real opportunity to tell him of [Plaintiff's] disability prior to February 24, 2005," id. at p. 8, the date on which management advised Plaintiff that his position was being eliminated.   Plaintiff also admits that he did not provide Allegheny Energy with any of his medical records of treatment with Dr. Kent until during the discovery portion of this litigation.

### Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56©).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  An issue is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986).

### *Discussion*

The ADA prohibits covered employers from discriminating against individuals on the basis of their disabilities.  42 U.S.C. § 12112(a).  Specifically, the ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  Id.

Plaintiff claims that Allegheny Energy discriminated against him on the basis of his alleged disability, i.e., Graves disease.  More particularly, Plaintiff alleges that Allegheny Energy discharged him from employment because he is disabled, is regarded as disabled, or has a record of disability.  Complaint, ¶ 47.  Further, Plaintiff claims that Allegheny Energy's stated reason for his discharge, i.e., that his position was eliminated due to downsizing, is pretextual. Complaint, ¶ 44.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show (1) he is a disabled person within the meaning of the ADA, (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer, and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.  Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 761 (3d Cir. 2004)(internal citations and quotation marks omitted).  Allegheny Energy argues that Plaintiff has not established and cannot establish a *prima facie* case of disability discrimination.

First, Allegheny Energy asserts that Plaintiff is not a qualified individual with a disability. A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  41 U.S.C. § 12111(8).  In turn, a "disability" is defined as "**(A)** a physical or mental impairment that substantially limits one or more of the major life activities of such individual; **(B)** a record of such an impairment; or **(C)** being regarded as having such an impairment."  42 U.S.C. § 12102(2).  "[W]hether a person has a disability under the ADA is an individualized inquiry."  Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999).

Plaintiff contends that he has a physical impairment, i.e., Graves disease.[2]  Assuming that Plaintiff could establish that he has Graves disease, merely having this condition does not render Plaintiff disabled for purposes of the ADA.  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195 (2002).  Plaintiff must establish that this condition substantially limits his ability to engage in a major activity of life.  Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999).

---

[2]      Defendant argues that Plaintiff cannot establish that he has an actual impairment, i.e., Graves disease.  Indeed, it is not at all clear that Plaintiff actually suffers from Graves disease.  According to Dr. Kowalyk, the definitive test for Graves disease was performed on Plaintiff and the results were negative, strongly suggesting that Plaintiff does not have Graves disease.  Defendant's Appendix, Tab I.  Dr. Kent initially suspected that Plaintiff might be suffering from Graves disease and clearly included it as part of his differential diagnosis.  Plaintiff's Appendix, Tab 4.  It is not entirely clear, however, whether, in light of Dr. Kowalyk's findings, Dr. Kent continues to subscribe to a diagnosis of Graves disease.  In conducting our analysis under Rule 56, because we must view the evidence in a light most favorable to the non-movant, we accord Plaintiff the benefit of the doubt here that he may have Graves disease.

Plaintiff contends that he is disabled because he has an impairment that substantially limits a major life activity.[3]  More specifically, Plaintiff alleges that his Graves disease substantially limits his ability to see.  See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Dkt. [26], pp. 8-9.  There is no dispute that the ability to see is considered a major life activity.  29 C.F.R. § 1630.2(i)("Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.).  The question here is whether his impairment substantially limits his ability to see.

"The ADA does not define 'substantially limits' but 'substantially' suggests 'considerable' or 'specified to a large degree.' " Sutton, 527 U.S. at 491.  The courts have determined that an individual is substantially limited in a major life activity "if he is '[u]nable to perform a major life activity that the average person in the general population can perform' or is '[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.' " Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996)(quoting 29 C.F.R. § 1630.2(j)); Emory v. Astrazeneca Pharmaceuticals LP., 401 F.3d 174, 179-80 (3d Cir. 2005).  Moderate restrictions or mild limitations are not considered disabilities under the ADA.  Kelly, supra at 106.  "[O]nly

---

[3]     Although the Complaint charges that Allegheny Energy discharged Plaintiff from employment because he is disabled, is regarded as disabled, or has a record of disability, see Complaint, ¶ 47, it appears that Plaintiff has abandoned his claims that Allegheny Energy regarded him as being disabled and that he had a record of disability.  Plaintiff has not set forth any facts to support these claims, nor has he made any argument on them in response to the motion for summary judgment.

extremely limiting disabilities ... qualify for protected status under the ADA." Marinelli v. City of Erie, PA, 216 F.3d 354, 362 (3d Cir. 2000).

In evaluating whether an individual is substantially limited in a major life activity it is instructive to look to the EEOC regulations. Deane v. Pocono Medical Center, 142 F.3d 138, 143 n. 4 (3d Cir. 1998)(en banc)(citing 29 C.F.R. § 1630.2)("Because the ADA does not define many of the pertinent terms, we are guided by the Regulations issued by the Equal Employment Opportunity Commission ("EEOC") to implement Title I of the Act. (citations omitted)."). Section 1630.2 of Title 29, Code of Federal Regulations, provides that the following factors should be considered in determining whether an individual is substantially limited in a major life activity: "(I)  [t]he  nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  Further, the effects of any measures being taken to correct or mitigate a physical or mental impairment must be taken into account when judging whether an individual is "substantially limited" in a major life activity and thus disabled under the ADA. Sutton, 527 U.S. at 482.  "[T]he burden rests with [the plaintiff] to show that [the impairment] 'substantially limits' [a major life activity]." Kelly, 94 F.3d at 105.

Plaintiff contends that because of his Graves disease, after long periods of viewing his computer screen his eyes become dry and irritated, his vision becomes blurred and he is unable to read fine and, sometimes, medium print on his screen.[4]  Otherwise, Plaintiff is able to see and use documents and normal everyday objects.  As well, he is able to read signs and, sometimes, the

---

[4]    Plaintiff has conceded that his previously asserted difficulties driving at night and climbing ladders do not qualify as disabilities as a matter of law.  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Dkt. [26], p. 8.

newspaper.  He acknowledges that his condition is manageable through the use of eye drops and closing his eyes periodically.  Allegheny Energy argues that these facts cannot support the conclusion that Plaintiff is substantially limited in the major life activity of seeing.  We agree.

Notably, Plaintiff has not cited any legal authority to support his claim that occasional blurred vision and dry eyes rise to the level of a disability under the ADA.  As Allegheny Energy points out, courts have routinely held that  "a 'visual impairment which hinders, or makes it more difficult for an individual to function at a full visual capacity, does not amount to a substantial limitation on one's ability to see where the evidence suggests the individual can otherwise conduct activities requiring visual acuity.' "  Phillips v. Wal-Mart Stores, Inc., 78 F.Supp.2d 1274, 1284 (S.D.Ala. 1999), aff'd, 220 F.3d 593 (11th Cir. 2000)(TABLE), (citing Person v. Wal-Mart Stores, Inc., 65 F.Supp.2d 361, 363-64 (E.D.N.C. 1999) (quoting Cline v. Fort Howard Corp., 963 F.Supp. 1075, 1080 (E.D.Okla. 1997)).  Under this standard, courts have held that claims of nearsightedness[5], blindness in one eye[6], glaucoma[7], double and sometimes triple vision[8], night blindness[9], dry and painful eyes[10], and blurred vision[11] do not amount to a disability under the ADA.  Additionally, Plaintiff admits that his vision improves after taking corrective measures.  Thus, it cannot be fairly said that Plaintiff suffers from a physical or mental

---

[5]   Cline, 963 F.Supp. at 1079-80.

[6]   Rivera v. Apple Industrial Corp., 148 F.Supp.2d 202, 213-14 (E.D.N.Y. 2001).

[7]   Mondaine v. American Drug Stores, Inc., 408 F.Supp.2d 1169, 1200 (D.Kan. 2006).

[8]   Overturf v. Penn Ventilator Co., Inc., 929 F.Supp. 895, 898 (E.D.Pa. 1996).

[9]   Bancale v. Cox Lumber Company, Inc., 1998 WL 469863, at *5 (M.D.Fla. May 18, 1998).

[10]   Person, 65 F.Supp.2d at 364.

[11]   Phillips, 78 F.Supp.2d at 1284.

impairment that substantially limits a major life activity.  Accordingly, Plaintiff has failed to establish the first element of his *prima facie* case for disability discrimination and, therefore, summary judgment in favor of Allegheny Energy is proper.

Even if Plaintiff could somehow demonstrate that his impairment substantially limits his ability to see, summary judgment in favor of Allegheny Energy would be proper nevertheless since Plaintiff has not demonstrated that he was discriminated against *because of* his disability.

It is undisputed that Charles Nevins made the decision to eliminate Plaintiff's position after the reorganization.  Further, there is no dispute that at the time he made his decision Mr. Nevins had no knowledge of any alleged or even perceived disability of Plaintiff.  In fact, Platintiff concedes that he had no regular interaction with Mr. Nevins and would have had no occasion to advise Nevins of any disability prior to the date Plaintiff was told his position was being eliminated.

The ADA prohibits discrimination "against a qualified individual with a disability *because of* the disability of such individual." 42 U.S.C. § 12112(a)(emphasis added).  As a matter of logic, if Mr. Nevins knew nothing about Plaintiff's Graves disease then Nevins could not have terminated Plaintiff's position *because of* a disability he knew nothing about.  See Cordoba v. Dillards, Inc., 419 F.3d 1169, 1183(11th Cir. 2005)( finding store manager could not have fired the employee "because of" a disability that the manager knew nothing about); Morisky v. Broward County, 80 F.3d 445, 448-49 (11th Cir. 1996)(same); Hedberg v. Indiana Bell Telephone Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995)("[A]n employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability ... At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the

disability.  If it does not know of the disability, the employer is firing the employee 'because of' some other reason.").

Because there is no dispute that Mr. Nevins was unaware of Plaintiff's alleged disability, Plaintiff cannot show that Nevins's decision was discriminatory in nature, leaving Plaintiff unable to establish the third element of his *prima facie* case under the ADA.  Accordingly, summary judgment in favor of Allegheny Energy is properly granted.

Plaintiff argues, however, that because he discussed his Graves symptoms with his supervisor, her knowledge can be imputed to Mr. Nevins.[12]  Again, Plaintiff offers no legal authority to support his argument.  Indeed, the case law suggests to the contrary.  As the Eleventh Circuit has noted, "discrimination is about actual knowledge and real intent not constructive knowledge and assumed intent."  Silvera v. Orange County School Bd., 244 F.3d 1253, 1262 (11th Cir. 2001).  Therefore, we decline to impute Spoljarick's knowledge[13] to Nevins.

Plaintiff also claims that Mr. Nevins was not solely responsible for Plaintiff's termination.[14]  However, Plaintiff has not pointed to any evidence in the record to support this

---

[12]    Plaintiff also notes that he advised Mr. Kemerer of his disability, seemingly to infer that Kemerer's knowledge should be imputed to Nevins as well.  However, whatever Kemerer learned about Plaintiff's disability he learned it on February 24, 2005, at the meeting with Plaintiff and Ms. Spoljarick, which was held to inform Plaintiff of the decision Nevins had clearly already made to eliminate Plaintiff's position.

[13]    It is not altogether clear what information Spoljarick had been given from the Plaintiff concerning his alleged disability.  Plaintiff simply avers that he related to her that he was suffering from symptoms of Graves disease.  Complaint, ¶ 21.  "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA."  Morisky, 80 F.3d at 448.  For purposes of summary judgment, we view the evidence in the light most favorable to Plaintiff and will assume that Spoljarick was aware of Plaintiff's dry eyes and double vision.

[14]    Plaintiff seems to suggest that because Spoljarick and Kemerer knew of his alleged disability at least as of February 24, 2005, and because they took no action thereafter to investigate Plaintiff's situation but, rather, allowed the termination date to come and go, they somehow were responsible for the elimination of his position.

claim, as is his obligation on summary judgment.  A party seeking to avoid summary judgment must offer specific material evidence to contradict evidence produced by the movant in order to create a factual dispute.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  This Plaintiff has not done.

Because Plaintiff has failed to establish that the elimination of his position was "because of" discrimination, Allegheny Energy is entitled to summary judgment.

Lastly, Allegheny Energy argues that even if the court were to find that Plaintiff could establish a *prima facie* case of disability discrimination, summary judgment in its favor is required nevertheless since Plaintiff has not established that Allegheny Energy's reason for eliminating the position was pretextual.  It appears that Allegheny Energy faced certain financial difficulties and reorganized as a cost-savings measure.  As noted, Allegheny Energy determined that following the reorganization there was a duplication of work responsibilities by administrative assistants.  Apparently in keeping with their business decision to cut costs, Mr. Nevins decided to eliminate the duplication, which resulted in the elimination of one administrative assistant position.

In order to show pretext, Plaintiff must show that his "disability" was a "determinative factor" in Allegheny Energy's decision.  "'Determinative factor' means that 'but for' the plaintiff's protected status the adverse employment action would not have occurred." Wimberly v. Severn Trent Services, Inc., 2007 WL 666767, at * 3 (E.D.Pa. Feb. 26, 2007)(citing Watson v. Southeastern Pennsylvania Transp. Authority, 207 F.3d 207 (3d Cir. 2000); Billet v. CIGNA Corp., 940 F.2d 812 (3d Cir. 1991).

Plaintiff's sole challenge on grounds of pretext is that Allegheny Energy's reason for terminating Plaintiff is "flimsy" and a jury might find the reason "unreasonable."  Plaintiff's

Memorandum of Law, Dkt. [26], p. 10.  Plaintiff offers no evidence to demonstrate that his alleged disability was a "determinative factor" and he offers no legal support for his argument. As Allegheny Energy points out, in this Circuit "merely reciting that [discrimination] is the reason for the decision does not make it so."  Billet v. CIGNA Corp., 940 F.2d at 816 (granting directed verdict when plaintiff failed to produce evidence to prove that employer's non-discriminatory reasoning was pretextual), overruled in part on other grounds, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).  Having failed to present any evidence that Allegheny Energy's reason for eliminating Plaintiff's position was pretextual, summary judgment in favor of Allegheny Energy is warranted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge

Dated:  20 July, 2007

cc:    Hon. Terrence F. McVerry
       United States District Judge

       All counsel of record by Notice of Electronic Filing